CHAPMAN, Appellant,

v.

BASINGER et al., Appellees.

[Cite as *Chapman v. Basinger* (1991), 71 Ohio App.3d 5.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–85.

Decided May 2, 1991.

*Bernard K. Bauer,* for appellant.

*Dennis M. Fitzgerald,* for appellees.

HADLEY, Judge.

This is an appeal from a summary judgment granted by the Common Pleas Court of Allen County, Ohio, in which it was decided that the attorney malpractice claim filed by plaintiff-appellant, Robert Chapman, against defendants-appellees, Malcom Basinger et al., was barred by the running of the statute of limitations.

In April or May 1981, Chapman hired Basinger to prepare a contract of sale whereby he would sell the fifty-percent interest he owned in the Ottawa Development Company to his business partner, Roland Alexander.

In November 1982, First Federal Savings & Loan brought suit against Ottawa Development Company, Roland Alexander, and Chapman, based upon a mortgage loan promissory note and open end mortgage executed in 1980, which Chapman had signed as a personal guarantor. Basinger was to represent Chapman in a 1985 hearing determining Chapman's personal liability on the note. However, Basinger failed to file a written brief after assuring the court he would. In January 1986, a decision was entered finding Chapman

personally liable on the note held by First Federal. Although Basinger filed an appeal from this decision, he failed to make sure a complete transcript was filed and did not file a brief in support of this appeal. As such, the appeal was dismissed.

In 1983, Basinger filed a collection suit on behalf of Chapman against Alexander due to Alexander's failure to pay sums owed to Chapman under the above sale agreement. This action was dismissed by the common pleas court on the basis that the 1981 buy-out agreement required such claims to be first submitted to arbitration. Basinger never appealed this dismissal nor did he attempt to arbitrate the matter. As such, Chapman has been unable to perfect a claim against Alexander.

Finally, in 1987, pursuant to the judgment against Chapman, First Federal filed a foreclosure action on property owned by Chapman. Chapman informed Basinger of this action and allegedly sent him a copy of this complaint. On December 11, 1987, Chapman sent Basinger a letter expressing his concern that he would lose property as a result of the foreclosure action. Chapman informed Basinger that his malpractice insurance carrier should pursue a settlement with First Federal due to Chapman's belief that his liability should have been cleared or released under the sale agreement drawn up by Basinger. In March 1988, a judgment entry was entered against Chapman since no pleading was filed on his behalf.

On January 2, 1988, Chapman sent a letter to Stephen Becker, the attorney representing First Federal in the foreclosure action against Chapman, in which he stated he had not received proper notice of the suit against him, that he had contacted an attorney in Florida, and finally, that "[i]f I experience the loss of any property, bad public exposure or clouds on my credit, you can make book on experiencing a large damage suit against all parties in this matter and not by any member of the Allen County Judicial System." On January 9, 1988, Chapman sent Becker a second letter informing him that he had contacted Basinger on January 7, 1988, and had found out that Basinger had not yet answered the summons issued by First Federal. In this letter, Chapman instructed Becker not to contact Basinger any further regarding his affairs. Chapman also sent a letter to Basinger on this date expressly informing Basinger that he would no longer be representing him in any of his business affairs and instructing Basinger to return any documents of Chapman's which he might still have.

On January 6, 1989, Chapman filed a legal malpractice action against Basinger and his law firm alleging negligent conduct by Basinger in his representation of Chapman in the above-referenced matters. In its memorandum decision granting summary judgment filed August 13, 1990, the trial

court found as a matter of law that Chapman knew of his injury and possible remedies against Basinger no later than December 11, 1987, and that "the termination date of the attorney-client relationship was no later than January 2, 1988." As such, Chapman's claim was barred by the one-year statute of limitations governing legal malpractice actions found in R.C. 2305.11(A).

It is from this judgment which Chapman makes two assignments of error.

■ Assignment of error number one:

"The trial court committed error, prejudicial to the plaintiff-appellant, by concluding that his claim is barred because the statute of limitations respecting his cause of action against the defendants-appellees accrued on January 2, 1988."

The Ohio Supreme Court, in *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus, has set forth the following test to determine when the applicable statute of limitations in an attorney malpractice action begins to run:

"Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."

This expanded the previous holding from *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941, syllabus. The first part of this test is also called the discovery rule, and under *Zimmie, supra,* a "cognizable event," notifying the client of the injury and the attorney's responsibility is required. In this case, the court reasonably found that under the discovery rule, Chapman "was aware, discovered and/or should have been put on notice of the need for further inquiry as early as 1982 but no later than December 11, 1987." This finding is not disputed by Chapman.

Accordingly, the court next looked to when the attorney-client relationship terminated. Chapman contended that it did not terminate until the letter dated January 9, 1988, was sent to Basinger, informing him that he no longer desired his legal representation. The court, in determining the termination date, relied upon *Brown v. Johnstone* (1982), 5 Ohio App.3d 165, 166, 5 OBR 347, 349, 450 N.E.2d 693, 695, where it was stated:

"[I]t is evident that conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship."

In applying this rule, the court found that there was conduct as early as 1985, after Chapman learned of his liability under the First Federal promissory note, which could act to dissolve the mutual confidence between Chapman and Basinger. The court likewise concluded that Chapman's letter to Basinger dated December 11, 1987, which informed Basinger that he should contact his insurance malpractice carrier, was also evidence of the breakdown of the mutual confidence in the attorney-client relationship. Finally, the court determined Chapman's letter to attorney Stephen Becker, dated January 2, 1988, in which he threatened to sue all parties involved, was also evidence of the collapse of the mutual confidence between Chapman and Basinger. Thus, the court held "as a matter of law that the termination date of the attorney-client relationship was no later than January 2, 1988." Consequently, the claim was barred since January 6, 1989, was more than a year later.

In *Omni–Food & Fashion v. Smith, supra,* the court stated that:

"[T]he question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact." *Id.,* 38 Ohio St.3d 385, at 388, 528 N.E.2d 941, at 944.

Since this is an appeal from a summary judgment, we must follow Civ.R. 56(C) and determine whether based on all the evidence and stipulation "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In this case, it must be determined whether reasonable minds could conclude only that the mutual confidence was destroyed prior to January 6, 1988.

In *Brown, supra,* the court found that:

"Initiating grievance proceedings before the local bar association evidences a client's loss of confidence in his attorney such as to indicate a termination of the professional relationship." *Id.,* 5 Ohio App.3d 165, 167, 5 OBR 347, 349, 450 N.E.2d 693, 695.

The client's affirmative act evidenced the loss of confidence.

In the case at hand, it is not conclusive that such an affirmative act transpired prior to January 6, 1988. The letter to Basinger dated December 11, 1987, merely expresses an opinion that Chapman does not feel he should have to bear any responsibility for the mistakes of Basinger. In the same way, the letter to Stephen Becker, attorney for First Federal, dated January 2, 1988, expresses Chapman's opinion about past transactions. Although it does indicate that Chapman has contacted other counsel, simply talking to another lawyer will not break a previous attorney-client relationship. This letter, in

and of itself, does not constitute an affirmative act. In fact, in the last paragraph, Chapman states, "If I experience the loss of any property * * * you can make book on experiencing a large damage suit against all parties in this matter and not by any member of the Allen County Judicial System." Chapman's anticipated actions are prefaced by an "if." Not until Chapman's letters to Becker and Basinger, both dated January 9, 1988, is any affirmative action taken, showing a definite break in the attorney-client relationship between Chapman and Basinger. In these letters, Chapman instructs Becker not to contact Basinger any further regarding the case, and he informs Basinger that he should "no longer consider yourself representing me in any of my business affairs." In the letter to Becker, he also refers to a phone call to Basinger after he apparently decided he no longer wanted Basinger representing his interests.

Based on the above analysis, we find that there is a question of fact to be decided and, thus, Chapman's first assignment of error is well taken.

■ Assignment of error number two:

"The trial court committed error, prejudicial to the plaintiff-appellant, by concluding that his claim is barred due to the 'continuous representation theory.'"

The continuous representation theory provides that as long as an attorney-client relationship exists, the client has the right to rely on the attorney's judgment and allow the attorney to correct any mistakes which the attorney may have made. A client cannot be expected to take action until both the relationship has terminated and the injury is realized.

In the case at hand, it is alleged that Basinger made numerous representations to Chapman that he would "take care of things." Reportedly, Chapman relied upon these representations until sometime in January when he realized Basinger had not done anything to remedy the situation and, in fact, could not do anything to redress the matter.

In *Mastran v. Marks* (Mar. 28, 1990), Summit App. No. 14270, unreported, 1990 WL 34845, the court held, applying the *Brown* case, that:

"[T]he termination of the attorney-client relationship depends, not on a subjective loss of confidence on the part of the client, but on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship. * * * "

In the case at hand, Basinger represented Chapman over the years on matters relating to the initial buy-out agreement. Additionally, facts are alleged which would show that Basinger encouraged Chapman to rely on his representation as late as January 7, 1988. Although Chapman had expressed

his dissatisfaction with Basinger's work prior to January 7, 1988, it is not conclusive as a matter of law that either he or Basinger had taken any affirmative act signifying the loss of mutual confidence and, consequently, the end of their relationship. Not until Chapman informed Becker not to send Basinger anything else regarding the foreclosure case and then sent Basinger a letter expressly terminating the relationship can it be decisively held that the relationship had been terminated. Only at this point could reasonable minds have come to but one conclusion: that the mutual confidence between attorney and client had collapsed and, thus, the attorney-client relationship terminated.

Therefore, we find that there is a question of fact as to whether the statute of limitations was tolled by the doctrine of continuous representation such as to preserve Chapman's claim against Basinger for legal malpractice. Accordingly, Chapman's second assignment of error is well taken.

For the reasons stated above, the decision of the Common Pleas Court of Allen County granting summary judgment is reversed and the case is remanded to the trial court.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and SHAW, J., concur.