JOURNAL ENTRY and OPINION
{¶ 1} The trial court granted summary judgment to appellees, Weston Hurd, Fallon, Paisley Howley, L.L.P., Gary W. Johnson, and Steven Brewer (hereinafter collectively referred to as "Weston Hurd"), on the legal malpractice claims alleged against them by appellant, North Shore Auto Sales, Inc., d/b/a JD Byrider ("JD Byrider.") It opined that JD Byrider's legal malpractice claims ran afoul of the one-year statute of limitations. JD Byrider now appeals.
 I. RELEVANT FACTS {¶ 2} In July 2000, JD Byrider filed a complaint against Andrew Block ("Block") to collect the remaining balance on a retail installment contract it had issued to him. At the time the lawsuit was filed, JD Byrider was represented by corporate counsel. It was not until after Block filed his answer, class action counterclaim, and a third-party complaint in October 2000 that JD Byrider engaged the services of Weston Hurd to take over the representation in the litigation.
 {¶ 3} Through Weston Hurd, JD Byrider removed the case to the court of common pleas. In December 2001, Block filed a motion to certify the class action, which was subsequently granted by the trial court in November 2002. JD Byrider, through its counsel, Weston Hurd, appealed the decision certifying the class to this court. This court affirmed the trial court's decision granting Block's motion to certify the class in July 2003. North ShoreAuto Financing, Inc., d.b.a. Car Now Acceptance Co. v. AndrewBlock, Cuyahoga App. No. 82226, 2003-Ohio-3964. An appeal to the Ohio Supreme Court followed.
 {¶ 4} Thereafter, a disagreement between JD Byrider and Weston Hurd arose over the litigation strategy, specifically whether to proceed with filing a motion to this court to certify a conflict to the Ohio Supreme Court. JD Byrider even retained another attorney, William Summers ("Summers") to review the case. On September 17, 2003, Summers filed, on behalf of JD Byrider, three items before this court: (1) a delayed motion for reconsideration; (2) a delayed motion to certify a conflict; and (3) a notice of his appearance as replacement counsel.
 {¶ 5} On October 1, 2003, Weston Hurd wrote to JD Byrider, informing it and its personal counsel, Summers, that once Summers files his notice of appearance on behalf of JD Byrider in the Ohio Supreme Court, Weston Hurd will withdraw representation of JD Byrider. Regretting that the "long standing relationship" between Weston Hurd and JD Byrider "has ended," the letter to JD Byrider continued as follows:
 {¶ 6} "The motions filed by Mr. Summers on your behalf in the court of appeals severed the bonds of mutual trust and confidence essential to the relationship of attorney and client."
 {¶ 7} On November 10, 2003, Summers filed in the Ohio Supreme Court a notice of substitution of counsel on behalf of JD Byrider. The Ohio Supreme Court denied to accept the appeal for review on December 10, 2003. North Shore Auto Financing, Inc. v.Block, 100 Ohio St.3d 1531, 2003-Ohio-6458, 800 N.E.2d 47.
 {¶ 8} On December 1, 2004, JD Byrider filed its complaint for legal malpractice against Weston Hurd. It alleged that Weston Hurd's strategy in the underlying Block case was negligent and, as a result, JD Byrider incurred damages. Two days before Weston Hurd filed its answer, JD Byrider filed an amended complaint. Because of the close proximity between the filings, Weston Hurd was not served with the amended complaint until after it filed its answer.
 {¶ 9} After it was served, Weston Hurd moved to strike the amended complaint — either in its entirety because it raised no new claims or in part because it contained the confidential social security numbers of two of its partners. The trial court granted the motion to strike the amended complaint in its entirety and ordered that it be sealed. Weston Hurd also moved the trial court for summary judgment, arguing that JD Byrider's legal malpractice claims were time-barred as the attorney-client relationship terminated more than one year from the date JD Byrider filed its suit. The trial court agreed, granting summary judgment to Weston Hurd. JD Byrider appeals the trial court's decisions granting summary judgment to Weston Hurd and striking its amended complaint.
 II. ASSIGNMENTS OF ERROR ONE THROUGH THREE {¶ 10} Although JD Byrider cites three separate assignments of error relating to the trial court's decision granting summary judgment to Weston Hurd, the gravamen of the appeal is that the trial court erred in determining that the cognizable event and the termination of the attorney-client relationship occurred well within the one-year time period of JD Byrider's legal malpractice suit.[1] However, in this court's de novo review, JD Byrider's arguments are without merit.
 {¶ 11} A one-year statute of limitations governs legal malpractice claims. R.C. 2305.11(A) provides as follows:
 {¶ 12} "[A]n action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, or an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued."
 {¶ 13} As explained by the Ohio Supreme Court in Zimmie v.Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, 58,538 N.E.2d 398:
 {¶ 14} "Thus, under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."
 {¶ 15} "In other words, the statute of limitations does not begin to run until the later of the termination of the attorney-client relationship, or the occurrence of a `cognizable event.'" Wozniak v. Tonidandel (1997), 121 Ohio App.3d 221,226, 699 N.E.2d 555.
 {¶ 16} The "discovery rule" turns on the factual question of a cognizable event. A "cognizable event" is one that alerts or should alert a reasonable person that the attorney committed an improper act in his or her legal representation. Spencer v.McGill (1993), 87 Ohio App.3d 267, 278, 622 N.E.2d 7. Likewise, the "termination rule" turns on the factual question of whether there was an "affirmative act by either the attorney or the client that signals the end of the relationship." Chapman v.Basinger (1991), 71 Ohio App.3d 5, 10, 592 N.E.2d 908, citingMastran v. Marks (Mar. 28, 1990), Summit App. No. 14270.
 {¶ 17} Under both the discovery rule and the termination rule, JD Byrider's claim for legal malpractice falls outside the one-year statute of limitations. First, the "cognizable event" alerting JD Byrider that Weston Hurd committed an improper act in its representation occurred, at the latest, on September 26, 2003, when this court denied JD Byrider's amended motion, filed through Summers, for reconsideration of the delayed motion to certify a conflict. It is patently clear from the record that JD Byrider was not only skeptical of Weston Hurd's strategy with respect to refusing to file a motion to certify a conflict in this court, but specifically sought out and retained another attorney, Summers, to review the decision and, ultimately, file the delayed motion on its behalf. On September 17, 2003, Summers substituted himself for Weston Hurd and indicated to this court that he represented JD Byrider. Once this court denied the original delayed motion, in addition to the motion for reconsideration, the "cognizable event" occurred. Indeed, JD Byrider's legal malpractice claim expressly provides that Weston Hurd committed legal malpractice when it failed to file a motion to certify a conflict in this court. Once all avenues to have a conflict certified to the Ohio Supreme Court were exhausted, which occurred on September 26, 2003, JD Byrider is deemed to have discovered the alleged improper act.
 {¶ 18} Second, while it is also clear from the record that the termination of the attorney-client relationship occurred after the "cognizable event," the date of termination still falls outside the one-year statute of limitations. On November 10, 2003, Summers, on behalf of JD Byrider, filed his notice of substitution of counsel in the pending appeal before the Ohio Supreme Court. As stated in the correspondence from Weston Hurd to JD Byrider on October 1, 2003, once Summers filed his notice of substitution of counsel with the Ohio Supreme Court, Weston Hurd would withdraw as counsel for JD Byrider. The correspondence was an affirmative act that signaled the end of the attorney-client relationship to JD Byrider once Summers substituted himself in the pending appeal. When Summers filed his substitution of counsel, it triggered the end of the attorney-client relationship between Weston Hurd and JD Byrider. Although the termination occurred after the "cognizable event," JD Byrider's legal malpractice claim should have been filed no later than November 10, 2004 in order to survive a statute of limitations attack. Because JD Byrider's December 1, 2004 legal malpractice claim was filed outside the one-year statute of limitations, the trial court properly granted summary judgment to Weston Hurd. JD Byrider's first, second, and third assignments of error are overruled and summary judgment in favor of Weston Hurd is affirmed.
 III. ASSIGNMENT OF ERROR FOUR {¶ 19} JD Byrider argues in its fourth assignment of error that the trial court erred in striking its amended complaint. In particular, it asserts that under Civ.R. 15(A), it was entitled to amend its complaint as of right because Weston Hurd had not yet answered the complaint. In addition, JD Byrider asserts that it alleged another, later date of legal malpractice that would survive the one-year statute of limitations. However, JD Byrider's arguments are without merit.
 {¶ 20} First, in comparing the original complaint with the amended complaint, it is apparent that there are no new causes of action pled, nor any allegation that there was another act of legal malpractice that extends the time period. Instead, JD Byrider argues for the first time on appeal that Weston Hurd committed legal malpractice by failing to raise the arbitration provision in the retail sales installment contract JD Byrider issued to Block. Even if this court were to entertain this waived error, JD Byrider specifically waived arbitration by pursuing litigation against Block and the lawsuit was filed before Weston Hurd was retained to represent JD Byrider. Moreover, this waived error occurred well before the "cognizable event" and would not save JD Byrider's legal malpractice claim from being time-barred.
 {¶ 21} Second, the only difference between the original complaint and the amended complaint is that the amended complaint lists the social security numbers of Gary Johnson and Timothy Johnson, as statutory agent for Weston Hurd. JD Byrider has failed here and below to assert any reason for including such immaterial, impertinent and harassing items on the caption. Because the amended complaint alleged nothing new and included confidential information, the trial court did not err in striking JD Byrider's amended complaint. Thus, the decision of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and McMonagle, j., concur.
[1] JD Byrider argues in its first assignment of error that the trial court erred in granting summary judgment against it on its claim for legal malpractice. Next, JD Byrider argues that the trial court erred in granting summary judgment against it because any cognizable events occurred within one year of the filing of its complaint. Finally, in its third assignment of error, JD Byrider argues that the trial court erred in granting summary judgment against it because the attorney-client relationship did not terminate until well within one year of the filing of its complaint.