DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which found appellant guilty of one count of theft by deception in violation of R.C. 2913.02(A)(3) and (B)(2), a felony of the third degree. For the reasons set forth below, this court affirms, in part, reverses, in part, and remands for resentencing in accordance with the Supreme Court of Ohio decision rendered in State v. Foster (2006),109 Ohio St.3d 1, 2006-Ohio-456.
 {¶ 2} Appellant, Patrick K. Walsh, sets forth the following seven assignments of error:
 {¶ 3} "I. The evidence was sufficient [sic] to establish that the value of the property was $100,000 or more.
 {¶ 4} "II. That part of the verdict which found the value of the property to be over $100,000 is against the manifest weight of the evidence.
 {¶ 5} "III. It constituted plain error not to instruct the jury as to the limited purpose for which evidence of appellant's affair was admitted.
 {¶ 6} "IV. It constituted ineffective assistance of counsel not to have requested a limiting instruction regarding the purpose for which evidence of appellant's affair could be considered.
 {¶ 7} "V. It constituted error not to have appellant personally present when counsel were invited to question a juror as to possible bias.
 {¶ 8} "VI. The amount of the restitution ordered is erroneous.
 {¶ 9} "VII. It constituted error to sentence defendant under an unconstitutional statute."
 {¶ 10} The following undisputed facts are relevant to the issues raised on appeal. In September 1998, appellant was hired to serve as the corporate comptroller of the Helm Instruction Company in Maumee, Ohio. Helm is a family owned and operated corporation which manufactures custom electrical control systems. In his role as corporate comptroller, appellant was vested with the duty to monitor, control and protect the financial integrity of Helm.
 {¶ 11} After joining Helm, appellant developed a close collegial relationship with Richard Wilhelm, president of the company. Wilhelm developed a high level of trust in appellant. Within months of starting at Helm, appellant approached Wilhelm, represented that his workload required an assistant, and requested to hire an assistant. Appellant recommended a candidate for the new position, Shari Price. Given appellant's favorable recommendation of Price, Wilhelm consented to hiring Price as appellant's assistant.
 {¶ 12} Unbeknownst to Wilhelm, appellant and Price had previously worked together at another company. Of more consequence, appellant concealed from Wilhelm the fact that appellant and Price had been engaged in an extramarital affair.
 {¶ 13} Over the course of the next five years, appellant and Price collaborated in an elaborate scheme through which the duo embezzled approximately $200,000 from Helm. Appellant was in a unique position to commit internal theft given his role as the corporate comptroller. Appellant possessed authority over corporate financial matters.
 {¶ 14} Between his hire and the time his theft was uncovered, appellant had executed tens of thousands of dollars in unauthorized checks from Helm accounts to pay off appellant's personal credit cards. Appellant then redacted portions of internal Helm business records in an effort to conceal the theft.
 {¶ 15} During this same time period, appellant issued himself and Price thousands of dollars in unauthorized salary increases, overtime payments, tuition reimbursement payments and cash withdrawals from company funds. Helm maintained no accounts with the credit card companies who received thousands of dollars in credit card debt payments written by appellant on Helm accounts. Appellant used Helm funds to pay off his considerable personal credit card debt.
 {¶ 16} Appellant's financial scheme was inadvertently uncovered by Mike Wilhelm at a Maumee gas station. Mike Wilhelm is a vice president at the company. Wilhelm stopped at a gas station in Maumee to fill his gas tank. A gas station attendant recognized the Helm company credit card. The attendant inquired of Wilhelm whether he was familiar with Price. Wilhelm indicated that Price was an employee at Helm. The attendant divulged to Wilhelm that Price frequently stopped into the station and made purchases with a Helm credit card. Price was not authorized to make such purchases and had not been issued a Helm corporation credit card.
 {¶ 17} This inadvertent revelation triggered a wide spread internal investigation by corporate officials of company finances. In the course of the investigation, Price confessed to her participation in the theft scheme with appellant. Price also confessed that she had been simultaneously engaged in an extramarital affair with appellant.
 {¶ 18} Helm officials had previously developed some suspicions about the nature of appellant's relationship with his subordinate, Price. Appellant had been confronted by corporate officials about the nature of his relationship with Price. Appellant was indignant and vehemently denied an inappropriate relationship with Price.
 {¶ 19} In the course of their investigation, Helm officials uncovered voluminous business records indicating as much as $200,000 plus in Helm corporate funds had been taken by appellant during the period in which he was Helm's comptroller and Price's lover.
 {¶ 20} After concluding the investigation, Helm officials confronted appellant with their findings. Appellant confessed to some portions of the theft and initiated restitution discussions. The amount of restitution being discussed by appellant paled in comparison to the actual amount of theft uncovered. From the onset, appellant methodically attempted to lay blame for the situation with everyone but himself. Helm decided to notify the Maumee Police Department of the theft. Appellant and Price were terminated.
 {¶ 21} Appellant was indicted on one count of aggravated theft by deception in violation of R.C. 2913.02(A)(3) and (B)(2), a third degree felony. Jury trial commenced on June 13, 2005. The jury issued a verdict of guilty on June 17, 2005. On July 19, 2005, appellant was sentenced to a term of incarceration of two years and ordered to pay $186,276.84 in restitution to Helm. Appellant filed timely notice of appeal.
 {¶ 22} In his first assignment of error, appellant contends the evidence was insufficient to establish a loss of more than $100,000. In his interrelated second assignment of error, appellant claims that the jury verdict finding the loss to be greater than $100,000 was against the manifest weight of the evidence. Given that appellant's first and second assignments of error both involve weight and sufficiency of the evidence in this case, we will consider them simultaneously.
 {¶ 23} A criminal conviction may be overturned on appeal if it is against the manifest weight of the evidence or because there is insufficient evidence. When examining whether a conviction goes against the manifest weight of the evidence, the appellate court serves as a "thirteenth juror' to conclude whether the trial court lost its way so significantly as to create a manifest miscarriage of justice necessitating that the conviction be overturned. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
 {¶ 24} In reaching this decision, we must review and consider the entire record, weigh the evidence, all reasonable inferences, and consider witness credibility. Id. The trial court directly observes and is presented with all of the witnesses and evidence. Given its unique opportunity to closely assess the witnesses and the evidence, we grant substantial deference to trial court's determinations. State v.Mickles, 6th No. L-05-1206, 2006-Ohio-3803, ¶ 46.
 {¶ 25} In conjunction with the above analysis, we also must consider the sufficiency of the evidence presented to the trial court. We must conclude whether the evidence submitted was legally sufficient to establish the elements of the charged offense. Thompkins,78 Ohio St.3d 386-387. In order to resolve the sufficiency question, we must ascertain whether the evidence presented, if believed, would satisfy an average person of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 26} Applying the above standards and principles to the instant case, we have carefully examined the record with particular attention to testimonial and documentary evidence specifically pertaining to the financial loss sustained by Helm. We reiterate that appellant was in a unique position to commit undetected theft as the corporate comptroller. Appellant controlled and monitored the finances of the company. Appellant's hand picked assistant collaborated with him in the theft.
 {¶ 27} Our review of the record shows voluminous documentation establishing appellant engaged in a clear pattern of issuing and executing thousands of dollars in payments from Helm accounts for unauthorized personal benefit. Appellant tapped corporate accounts to pay off his many personal credit cards, took unauthorized salary increases, cash payouts, and tuition reimbursements.
 {¶ 28} The record contains uncontroverted documentation of appellant's theft from Helm. In conjunction with ample supporting financial documentation, the record contains credible and voluminous supporting testimony from Helm management. They conducted the internal investigation which initially uncovered appellant's theft. They directly confronted appellant with his actions. The testimony of Helm management comports with the documentary evidence. In addition, the testimony of Price further confirms appellant's culpability.
 {¶ 29} We are not persuaded by appellant's self-serving testimony which unsuccessfully attempts to restrict his liability below the critical $100,000 threshold through irrelevant and legally unsupported contentions. For example, appellant claims that his unauthorized execution of corporate checks to pay off his personal credit cards actually should be interpreted as an "interest-free loan" from appellant to Helm. Appellant maintains that due to poor financial performance by the company, appellant did not avail himself of salary increases to which he was entitled. Appellant claims it was less of a fiscal burden on the company for him to utilize corporate funds to pay off his personal credit cards in lieu of a salary increase. The record shows these arguments are wholly unsupported and defy all logic.
 {¶ 30} In order for the evidence to support appellant's conviction, it must show that appellant knowingly and by deception took control of property of Helm in an amount greater than or equal to $100,000. We find the record contains objective and persuasive documentary and testimonial evidence establishing that appellant stole funds from Helm in an amount of $186,276.84. We are not persuaded by appellant's transparent efforts to shift blame and mitigate this figure. Appellant's conviction is supported by legally sufficient evidence in the record. His conviction was not against the manifest weight of the evidence. Appellant's first and second assignments of error are not well-taken.
 {¶ 31} We will next consider appellant's third and fourth assignments of error conjunctively as they are analytically interconnected. In his third assignment of error, appellant contends it constituted plain error for the court not to have given an unrequested jury instruction to delineate the purposes for which evidence of appellant's affair with Price was admitted. In conjunction with this, appellant's fourth assignment of error is that trial counsel's failure to request such an instruction constitutes proof of ineffective assistance of counsel.
 {¶ 32} Crim.R. 52(B) provides that, "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is an error that substantially affects the outcome of the trial. State v. Slagle (1992),65 Ohio St.3d 597, 605. The appellate court must examine the purported error in the context in which the evidence was submitted at trial in order to ascertain whether the appellant would have been convicted regardless of the alleged error. Id. To warrant reversal, it must be shown that the error was outcome determinative.
 {¶ 33} Appellant claims that the prosecution alleged in closing argument that appellant's deception to his employer and to his wife regarding his affair with Price should be interpreted as evidence of his guilt of aggravated theft. We have carefully reviewed the disputed portion of the closing argument and do not concur in that interpretation. Viewed in full context, the prosecution's disputed remark in closing cannot rationally be interpreted as having been taken as determinative evidence of guilt so as to affect the outcome of the trial.
 {¶ 34} The record contains a wealth of documentary and testimonial evidence supporting appellant's guilt regardless of the affair. We also note that appellant himself discussed his extramarital affair during direct examination. The record makes clear that appellant was convicted based upon relevant and persuasive evidence. Appellant was not convicted of theft because he lied about his adultery. Appellant's third assignment of error is not well-taken.
 {¶ 35} Appellant's fourth assignment of error argues that the trial court's failure to give the above discussed jury instruction comprises proof of ineffective assistance of counsel. Controlling case law dictates that to establish a viable claim of ineffective assistance of counsel, one must show that counsel so significantly undermined the functioning of the adversarial process that the trial cannot be adequately relied upon as having produced a fair and just result.State v. Leggett, 6th Dist. No. L-03-1170, 2004- Ohio-4843, ¶ 25.
 {¶ 36} The burden of proof on such a claim is two-fold. First, it must be established that the disputed legal representation fell beneath an objective threshold of reasonableness. Secondly, it must be shown by a reasonable degree of probability, but for counsel's alleged ineffective actions, that the results of the trial would have been different.
 {¶ 37} As we stated in our conclusion in response to appellant's third assignment of error, the record reveals ample evidence of appellant's guilt regardless of his affair. It cannot be said the outcome of the trial would have been different but for a jury instruction further defining the purposes of the evidence of the affair. Appellant's fourth assignment of error is not well-taken.
 {¶ 38} In his fifth assignment of error, appellant maintains it constituted reversible error not to have appellant personally present when the court invited counsel to question a juror regarding potential bias.
 {¶ 39} The record shows that during trial, a juror conscientiously brought to the judge's attention a concern regarding a potential conflict. The juror thought that there was some possibility appellant's daughter may have attended elementary school with the juror's daughter approximately 12 years prior to the trial. Upon questioning by the judge in the presence of all counsel, it became apparent the juror had absolutely no actual knowledge, familiarity, or connection to appellant or his family. In fact, appellant's counsel declined to question the juror on this issue.
 {¶ 40} The record is clear that the juror at issue did not know the appellant. The record is clear that there was no conflict or bias between this juror and the appellant. There is no evidence in the record to support the notion that this alleged error prejudiced appellant. Appellant's fifth assignment of error is not well-taken.
 {¶ 41} In appellant's sixth assignment of error, he alleges that the amount of restitution ordered against appellant was erroneous. In support, appellant maintains the restitution figure was unsupported by the evidence. Based upon our conclusions and our response to appellant's first and second assignments of error, we find this argument to be moot. The record encompasses ample objective and relevant evidence in support of the conviction and restitution. Appellant's sixth assignment of error is not well-taken.
 {¶ 42} In appellant's seventh assignment of error, he contends his case must be remanded for resentencing pursuant to State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. In support, appellant claims his sentence was unconstitutional as it was conducted pursuant to the formally mandated, but now unconstitutional sentencing provision of R.C.2929.14(B). The prosecution concedes the necessity of remanding for resentencing on this basis.
 {¶ 43} We find appellant's seventh assignment of error well-taken. We remand this matter for resentencing in conformity with the nonsevered sentencing statutes.
 {¶ 44} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. Appellant's conviction is affirmed. His sentence is vacated, and this matter is remanded for resentencing pursuant to Foster.
 {¶ 45} Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment of the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT, AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.