*601 Moyer, C.J.,
concurring.
{¶ 27} I agree with the conclusion of the majority that a law firm’s liability for malpractice is vicarious. I write separately to discuss the Ohio cases advanced by National Union Fire Insurance Company of Pittsburg, PA, petitioner, in support of its cause and to emphasize that today we answer only the very narrow certified question before us.
{¶28} Petitioner cites a number of Ohio cases for the proposition that law firms may be directly liable for malpractice.[2] However, these cases do not directly answer the certified question. In fact, no case cited by the petitioner probes the nature of law-firm liability for malpractice. Furthermore, in each case, at least one attorney was sued along with the law-firm defendant, thereby obscuring the question of whether those courts even considered that the law firm could be liable for malpractice in the absence of a culpable individual attorney. Biddle v. Warren Gen. Hosp. (1999), 86 Ohio St.3d 395, 397, 715 N.E.2d 518; Blackwell v. Gorman, 142 Ohio Misc.2d 50, 2007-Ohio-3504, 870 N.E.2d 1238, ¶ 1; Rosenberg v. Atkins (Oct. 5, 1994), Hamilton App. No. C-930259, 1994 WL 536568, at *2; N. Shore Auto Sales, Inc. v. Weston, Hurd, Fallon, Paisler & Howley, L.L.P., Cuyahoga App. No. 86332, 2006-Ohio-456, 2006 WL 250733, at ¶ 1; and Baker v. LeBoeuf, Lamb, Leiby & MacRae (Oct. 7, 1993), S.D.Ohio No. C-1-92-718, 1993 WL 662352, at *8.
{¶ 29} Biddle concerned the existence of a tort cause of action for the unauthorized disclosure of nonpublic medical information learned within a physician-patient relationship. Biddle, 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph one of the syllabus. Biddle was not a malpractice action, nor did we examine the nature of a law firm’s liability for malpractice in that case. We held that the law firm in Biddle could be hable in tort as a third party for “inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship.” Id. at paragraph three of the syllabus. In Biddle, the law firm defended its receipt of patients’ private records by arguing, in part, that the disclosing hospital was the law firm’s client and therefore that the firm had a duty of confidentiality with regard to those records. Id. at 403, 715 N.E.2d 518. In rejecting the firm’s arguments, we referred to the duties of law firms in general, but did so in relation to each lawyer’s duty to maintain confidences. Id. at 404, 715 N.E.2d *602 518. Such duties emanate from the professional responsibilities of individual attorneys within the firm, consistent with the majority opinion in this case.
{¶ 30} In Blackwell, the plaintiff sued his former trial lawyer and his trial lawyer’s law firm for malpractice. Blackwell, 142 Ohio Misc.2d 50, 2007-Ohio-3504, 870 N.E.2d 1238, ¶ 1. The trial court did not expressly consider whether a law firm may independently commit malpractice. Instead, the trial court evaluated whether the statute of limitations for the malpractice claim had expired. Id. at ¶ 5. Under R.C. 2305.11(A), the time for bringing a legal-malpractice claim begins to run from the latter of either a “cognizable event” or the termination of the attorney-client relationship. Id. at ¶ 53. The trial court declined to dismiss the case, finding that the tolling event — the end of the attorney-client relationship-occurred within the time to file suit. Id. at ¶ 58. Although the trial court referred generally to “representation” and “work performed” by the law firm, the decision specifically refers to work performed by individual attorneys, including the named individual attorney defendant, who worked for the client well within the one-year limit.[3] Id. at ¶ 56-57. It is not possible to parse the Blackwell judgment for the proposition that a law firm could independently commit malpractice or engage in an attorney-client relationship on its own.
{¶ 31} In Rosenberg, the plaintiff sued her former attorney and law firm. Rosenberg, Hamilton App. No. C-930259, 1994 WL 536568, at *2. The court of appeals held that the cause of action was malpractice, despite the plaintiffs arguments to the contrary, and that the suit was time-barred because it had not been filed within one year of the alleged malpractice. Id. at *3. Although the court of appeals noted that each of the claims against the law firm “arose out of the manner in which appellant was represented within the attorney-client relationship,” the opinion does not explain whether the claims against the law firm were asserted directly or vicariously. Id. at *2-3. Furthermore, the opinion does not address whether the law firm could be directly liable for malpractice or whether the firm could be liable in the absence of an individual attorney’s malpractice. As with Blackwell, it is impossible to parse this opinion to support the petitioner’s position.
{¶ 32} In N. Shore Auto Sales, Inc., the plaintiff sued its former law firm and two attorneys. N. Shore Auto Sales, Inc., 2006-Ohio-456, 2006 WL 250733, at ¶ 1. In the first paragraph of its opinion, the court of appeals indicated that it would *603 refer collectively to the two attorneys and the law firm (Weston Hurd) as “Weston Hurd.” Id. at ¶ 1. Given that the court of appeals referred to all defendants collectively as “Weston Hurd” throughout the opinion, the case is of no utility in our present inquiry. For example, it is impossible to infer that the court referred only to the law firm when it marked the “end of the attorney-client relationship between Weston Hurd and [the client]” for statute-of-limitations purposes. Id. at ¶ 18. Moreover, the court did not consider whether a law firm could be independently liable for malpractice in the absence of a liable attorney.
{¶ 33} Finally, Baker was a decision of a federal trial court that considered the validity of a forum-selection clause in a contract. Baker, S.D.Ohio No. C-1-92-718, 1993 WL 662352, at *1. The law firm at issue claimed that the plaintiffs had sued it, rather than the real party in interest, in order to avoid that clause. Id. at *5. The federal court rejected this argument, finding that the plaintiffs had established a colorable claim of an existing attorney-client relationship with the law firm sufficient to avoid dismissal as a sham lawsuit. Id. at *6. The court found that the plaintiffs’ pleadings were sufficient to survive a motion to dismiss. The court in Baker did not consider whether a law firm could be directly liable for malpractice or whether a law firm could be liable for malpractice in the absence of a named attorney who was himself subject to suit. We cannot ascertain whether the court considered the malpractice direct or vicarious, because several individual attorney defendants were also parties to the suit. Id. at *3. Thus, Baker is inapposite to the case before us.
{¶ 34} These cases speak of the ability of a law firm to maintain an attorney-client relationship or to commit malpractice only in very general terms. We cannot determine from these decisions whether the issue presented to the courts was based on direct or vicarious liability. And none of those courts addressed the narrow issue before us. In addition, these cases do not suggest that it is common practice for courts to consider law firms directly liable for malpractice or hable in the absence of a liable individual attorney. For all of those reasons, I find the cases cited by petitioner to be distinguishable from this case.
{¶ 35} I stress the narrowness of our holding today. This opinion should not be understood to inhibit law-firm liability for acts like those alleged by the petitioner. Rather, a law firm may be held vicariously liable for malpractice as discussed in the majority opinion. Further, our holding today does not foreclose the possibility that a law firm may be directly liable on a cause of action other than malpractice. Yet the limited record and the nature of answering a certified question do not permit us to entertain such an inquiry in this case.
{¶ 36} Therefore, I concur in the majority opinion.
Pfeifer, DeGenaro, O’Connor, and Lanzinger, JJ., concur in the foregoing opinion.
*604 Keating, Muething & Klekamp, P.L.L., Joseph M. Callow Jr., Danielle M. D’Addesa, and Charles M. Miller, for petitioner.
Taft, Stettinius & Hollister, L.L.P., Lawrence D. Walker, and Benjamin J. Parsons, for respondents.

. Biddle v. Warren Gen. Hosp. (1999), 86 Ohio St.3d 395, 715 N.E.24 518; Blackwell v. Gorman, 142 Ohio Misc.2d 50, 2007-Ohio-3504, 870 N.E.2d 1238; Rosenberg v. Atkins (Oct. 5, 1994), Hamilton App. No. C-930259, 1994 WL 536568; N. Shore Auto Sales, Inc. v. Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Cuyahoga App. No. 86332, 2006-Ohio-456, 2006 WL 250733; and Baker v. LeBoeuf, Lamb, Leiby & MacRae (Oct. 7, 1993), S.D.Ohio No. C-1-92-718, 1993 WL 662352.

. We do not address today the complex attorney-client relationship that arises when a client employs several different or successive attorneys in the same firm, nor do we confront the interplay of those relationships and the tolling events listed in R.C. 2305.11(A). Similarly, our opinion does not reach questions of the duties and liabilities of a law firm that may arise from a general engagement agreement with a client. Those questions are beyond the scope of the question of state law certified by the Sixth Circuit Court of Appeals.