NATIONAL UNION FIRE INSURANCE COMPANY OF

PITTSBURGH, PA *v*. WUERTH ET AL.

[Cite as *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,*

122 Ohio St.3d 594, 2009-Ohio-3601.]

*Certified question of state law — Practice of law — Vicarious liability for legal malpractice — Law firm cannot directly commit legal malpractice — Law firm may be vicariously liable for legal malpractice only when its principals or associates are liable.*

(No. 2008-1334 — Submitted March 24, 2009 — Decided July 29, 2009.)

ON ORDER from the United States Court of Appeals for the Sixth Circuit, Certifying State Law Question, No. 07-4035.

————————————

SYLLABUS OF THE COURT

1. A law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice.

2. A law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice.

————————————

O'DONNELL, J.

{¶ 1} The United States Court of Appeals for the Sixth Circuit has certified one question of state law for our resolution: "Under Ohio law, can a legal malpractice claim be maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance?"

{¶ 2} We answer the certified question in the negative and hold that a law firm does not engage in the practice of law and therefore cannot commit legal

malpractice directly and that a law firm is not vicariously liable for legal malpractice unless one of its principals or associates is liable for legal malpractice.

## Facts and Procedural History

{¶ 3} In accordance with the findings of the United States District Court and the certification order submitted by the United States Court of Appeals, we ascertain the following factual and procedural history.

{¶ 4} In August 1998, Hurricane Bonnie struck Virginia Beach, Virginia, and damaged six hotels that were insured by the Nationwide Mutual Insurance Company. Nationwide contacted National Catastrophe Adjusters ("NCA") to provide claims adjustment services, and NCA retained McLarens Toplis North America to perform the work. McLarens, in turn, hired an individual adjuster, Larry Wood. Eleven days after Wood began working on the project, however, Nationwide demanded his removal, claiming that he had negligently overestimated the damage to the six hotels by more than $16 million.

{¶ 5} Nationwide subsequently filed suit against NCA, McLarens, and Wood, claiming negligence and damages in excess of $16 million. McLarens and Wood are insureds of the National Union Fire Insurance Company of Pittsburgh, PA, petitioners, which retained the Columbus, Ohio, law firm of Lane, Alton & Horst, L.L.C., respondents, to provide their defense. The firm assigned the matter to one of its partners, Richard Wuerth, and an associate, Beth Lashuk.

{¶ 6} A jury trial on Nationwide's claims commenced in the United States District Court for the Southern District of Ohio on February 4, 2002. In the second week of trial, Wuerth informed the firm and the district court that he did not feel well. Wuerth continued representing McLarens, however, until February 14, 2002, when he collapsed in his home and required emergency transport to the hospital. His treating physician opined that he could not continue with the trial and would be incapacitated for the foreseeable future. After the district court

denied a motion for mistrial filed by McLarens and Wood, the trial continued with other attorneys from Lane Alton. The jury returned a verdict in favor of Nationwide on February 21, 2002, awarding it $16.2 million. Pursuant to a "high-low" settlement reached by the parties during the jury's deliberations, National Union paid Nationwide $8.25 million.

{¶ 7} On February 21, 2003, National Union filed the instant action in the United States District Court for the Southern District of Ohio, claiming that Wuerth had committed legal malpractice, that Lane Alton was vicariously liable for Wuerth's malpractice, and that the firm itself had committed malpractice. While National Union alleged numerous wrongful acts and omissions by several individuals in the firm, Wuerth was the only individual named as a defendant in the complaint.

{¶ 8} On a motion for summary judgment filed by Wuerth and Lane Alton, the district court dismissed Wuerth from the action because National Union had filed its complaint after the expiration of the one-year statute of limitations for legal malpractice claims set forth in R.C. 2305.11(A). *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth* (S.D.Ohio 2007), 540 F.Supp.2d 900, 911. Because National Union had no cognizable claims against Wuerth, the district court further dismissed the claims for vicarious liability against Lane Alton. Id. at 912. Finally, the district court determined that Lane Alton cannot be held directly liable for legal malpractice because it is not an attorney and does not practice law. Id. at 913. Thus, the district court entered summary judgment in favor of Wuerth and Lane Alton. Id. at 914.

{¶ 9} National Union appealed to the United States Court of Appeals for the Sixth Circuit, arguing inter alia that Lane Alton may be held directly liable for legal malpractice. The court of appeals determined that Ohio law is unsettled on this issue and, pursuant to Sup.Ct.Prac.R. XVIII, certified the following question of state law to this court: "Under Ohio law, can a legal malpractice claim be

maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance?" We subsequently agreed to answer the question. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 119 Ohio St.3d 1442, 2008-Ohio-4487, 893 N.E.2d 514.

{¶ 10} National Union contends that an attorney-client relationship may exist between a law firm and a client and that a firm owes a duty of care to its clients. Thus, according to National Union, a law firm should be directly liable for malpractice when the firm breaches its professional duties. Moreover, National Union asserts that a firm is vicariously liable for malpractice committed by its attorneys, even when no attorney can be held liable or has been named as a defendant.

{¶ 11} Lane Alton, on the other hand, maintains that only attorneys are able to practice law and thus that only attorneys can breach a professional duty. The firm further asserts that it cannot be held vicariously liable for malpractice unless one of its attorneys is liable for malpractice. Thus, Lane Alton urges this court to hold that a law firm is not liable for malpractice unless one or more of its attorneys is liable for malpractice.

{¶ 12} Accordingly, we are presented with two limited issues for review: one, whether a law firm may be *directly* liable for legal malpractice – i.e., whether a law firm, as an entity, can commit legal malpractice – and two, whether a law firm may be held *vicariously* liable for malpractice when none of its principals or employees are liable for malpractice or have been named as defendants.

**Direct liability of a law firm for legal malpractice**

{¶ 13} When analyzing issues that relate to malpractice by attorneys and physicians, we have often drawn upon the similarities between the legal and medical professions. For example, in *Richardson v. Doe* (1964), 176 Ohio St.

370, 372, 27 O.O.2d 345, 199 N.E.2d 878, we addressed an issue concerning the statute of limitations that applies to malpractice claims and observed that "[i]t is the misfortune of both physicians and lawyers that, in a very considerable proportion of their cases, they are unable to accomplish the purpose desired. * * * Since physicians must often fail to fulfill expectations, they, along with lawyers, are peculiarly susceptible to the charge of failure in the performance of their professional duties." And in *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 57, 538 N.E.2d 398, we held that "[m]edical and legal malpractice actions should conform to the same standard for determining when a cause of action accrues and when the statute of limitations commences so we do not discriminate 'for or against' doctors or 'for or against' lawyers."

{¶ 14} Thus, our precedent concerning medical malpractice is instructive, and in the medical context, we have recognized that because only individuals practice medicine, only individuals can commit medical malpractice. For instance, in *Browning v. Burt* (1993), 66 Ohio St.3d 544, 556, 613 N.E.2d 993, we explained that "[a] hospital does not practice medicine and is incapable of committing malpractice." *Browning* cites *Lombard v. Good Samaritan Med. Ctr.* (1982), 69 Ohio St.2d 471, 23 O.O.3d 410, 433 N.E.2d 162, and *Richardson*, 176 Ohio St. 370, 27 O.O.2d 345, 199 N.E.2d 878 (only physicians can commit medical malpractice). See also *Youngstown Park & Falls St. Ry. Co. v. Kessler* (1911), 84 Ohio St. 74, 77, 95 N.E. 509 ("a railroad company cannot be guilty of malpractice. It is not authorized to practice medicine or surgery * * *"); *Propst v. Health Maintenance Plan, Inc.* (1990), 64 Ohio App.3d 812, 814, 582 N.E.2d 1142 (a corporation cannot be held liable for medical malpractice because it does not practice medicine).

{¶ 15} This precedent concerning medical malpractice is consistent with the general definition of "malpractice" that we set forth in *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 527 N.E.2d 1235, wherein we stated, "The term

'malpractice' refers to professional misconduct, *i.e.*, the failure of *one rendering services in the practice of a profession* to exercise that degree of skill and learning normally applied *by members of that profession* in similar circumstances." (Emphasis added.)  Id. at 211, citing 2 Restatement of the Law 2d, Torts (1965), Section 299A.  Moreover, we have traditionally taken a narrow view of who may commit malpractice.  As we explained in *Thompson v. Community Mental Health Ctrs. of Warren* (1994), 71 Ohio St.3d 194, 195, 642 N.E.2d 1102, "[i]t is well-established common law of Ohio that malpractice is limited to the negligence of physicians and attorneys."  See also *Richardson*, 176 Ohio St. at 372-373, 199 N.E.2d 878; *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179-180, 546 N.E.2d 206.

{¶ 16}  As with the practice of medicine, it is apparent that only individuals may practice law in Ohio.  Section 2(B)(1)(g), Article IV of the Ohio Constitution grants this court original jurisdiction with respect to "[a]dmission to the practice of law, the discipline of *persons so admitted*, and all other matters relating to the practice of law." (Emphasis added.)  Pursuant to our constitutional authority, we have adopted Gov.Bar R. I, which concerns admission to the practice of law in Ohio and sets forth requirements that only individuals may satisfy – for example, earning the requisite degrees, possessing the requisite character and fitness, passing the bar exam, and taking the oath of office.  We have also prohibited the unauthorized practice of law, which is defined as "the rendering of legal services for another by any *person* not admitted to practice in Ohio." (Emphasis added.)  Gov.Bar R. VII(2)(A).  Moreover, Gov.Bar R. IV provides, "The Ohio Rules of Professional Conduct * * * shall be binding upon all *persons* admitted to practice law in Ohio." (Emphasis added.)

{¶ 17}  Pursuant to Gov.Bar R. III, attorneys may associate in law firms, but Section 1 of the rule establishes that "[a]n attorney * * * may practice law in Ohio * * * *through* a legal professional association, corporation, or legal clinic,

formed under Chapters 1701 or 1785 or licensed under Chapter 1703 of the Revised Code, a limited liability company, formed or registered under Chapter 1705 of the Revised Code, or a partnership having limited liability, registered under Chapter 1775 of the Revised Code." (Emphasis added.) And as stated in the Code of Professional Responsibility, Definitions (2), " 'Law firm' includes a legal professional association, corporation, legal clinic, limited liability company, registered partnership, or any other organization *under which a lawyer may engage in the practice of law * * *.*"[1] (Emphasis added.)

{¶ 18} In this regard, a law firm is a business entity through which one or more individual attorneys practice their profession. While clients may refer to a law firm as providing their legal representation or giving legal advice, in reality, it is in every instance the attorneys in the firm who perform those services and with whom clients have an attorney-client relationship. Thus, in conformity with our decisions concerning the practice of medicine, we hold that a law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice.

**Vicarious liability of a law firm for legal malpractice**

{¶ 19} We next consider whether a law firm may be vicariously liable for legal malpractice when no individual attorneys are liable or have been named.

{¶ 20} As we explained in *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46, "[g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." Id., citing *Councell v. Douglas* (1955), 163 Ohio St. 292, 295-296, 56 O.O. 262, 126 N.E.2d 597. Similarly, in *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, we stated that "[i]t is

---

1. The Rules of Professional Conduct superseded the Code of Professional Responsibility in February 2007, but the new definition of "firm" does not support the contention that a firm practices law.

a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence. * * * [T]he most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of *respondeat superior*." Id. at 255, overruled on other grounds by *Clark*, 68 Ohio St.3d at 444-445, 628 N.E.2d 46. This doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant), terms that we have used interchangeably. *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 173, 24 OBR 403, 494 N.E.2d 1091.

{¶ 21} In *Losito v. Kruse* (1940), 136 Ohio St. 183, 16 O.O. 185, 24 N.E.2d 705, we discussed the respective liabilities of a master and servant, stating, "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied." Id. at 187, citing *Maple v. Cincinnati, Hamilton & Dayton RR. Co.* (1883), 40 Ohio St. 313. See also *State ex rel. Flagg v. Bedford* (1966), 7 Ohio St.2d 45, 47-48, 36 O.O.2d 41, 218 N.E.2d 601 ("This court follows the rule that until the injured party receives full satisfaction, he may sue either the servant, who is primarily liable, or the master, who is secondarily liable, and a mere judgment obtained against the former is not a bar to an action or judgment against the latter"). "The plaintiff, in any event, can have but one satisfaction of his claim." *Losito*, 136 Ohio St. at 187-188, 16 O.O. 185, 24 N.E.2d 705.

{¶ 22} Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable. As we held in *Losito*, for example, "[a] settlement with and release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." Id. at 188, 16

O.O. 185, 24 N.E.2d 705, citing *Herron v. Youngstown* (1940), 136 Ohio St. 190, 16 O.O. 188, 24 N.E.2d 708; *Bello v. Cleveland* (1922), 106 Ohio St. 94, 138 N.E. 526; *Brown v. Louisburg* (1900), 126 N.C. 701, 36 S.E. 166.  Similarly, in *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, we recognized that "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal.  *If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions*."  (Emphasis added.)  Id. at ¶ 20, citing *Losito* and *Herron*.  See also *Munson v. United States* (C.A.6, 1967), 380 F.2d 976, 979 (applying Ohio law and stating that "the master's sole liability depends upon a finding of liability on the part of the servant, so he cannot be held accountable where there is no such finding").

**{¶ 23}**   Moreover, this rule applies not only to claims of respondeat superior, but also to other types of vicarious liability.  As we emphasized in *Pressnell*, 38 Ohio St.3d at 216, 527 N.E.2d 1235, "[i]t is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment.  Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer.  Because no action can be maintained against [the agent] in the instant case, it is obvious that any imputed actions against the [principal] are also untenable."

**{¶ 24}**   There is no basis for differentiating between a law firm and any other principal to whom Ohio law would apply.  In fact, the Restatement of the Law 3d, The Law Governing Lawyers (2000) 439-440, Section 58, indicates that a law firm has no vicarious liability unless at least one principal or employee of the firm is liable.  Entitled "Vicarious Liability," it provides:

**{¶ 25}** "(1) A law firm is subject to civil liability for injury legally caused to a person by any wrongful act or omission of any principal or employee of the firm who was acting in the ordinary course of the firm's business or with actual or apparent authority." The drafters' commentary emphasizes, however, that "[t]his Section sets forth the vicarious liability of a law firm and its principals. *It presupposes that a firm principal or employee is liable on one or more claims * * ** and considers when the firm itself and each of its principals share in that liability." (Emphasis added.) Comment *a*.

**{¶ 26}** Based on this authority, we hold that a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice. Accordingly, we answer the certified question of state law in the negative.

So answered.

MOYER, C.J., and DEGENARO, O'CONNOR, and CUPP, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in the concurring opinion of MOYER, C.J.

MARY DEGENARO, J., of the Seventh Appellate District, sitting for LUNDBERG STRATTON, J.

————————————

**MOYER, C.J., concurring.**

**{¶ 27}** I agree with the conclusion of the majority that a law firm's liability for malpractice is vicarious. I write separately to discuss the Ohio cases advanced by National Union Fire Insurance Company of Pittsburg, PA, petitioner, in support of its cause and to emphasize that today we answer only the very narrow certified question before us.

**{¶ 28}** Petitioner cites a number of Ohio cases for the proposition that law firms may be directly liable for malpractice.[2] However, these cases do not directly answer the certified question. In fact, no case cited by the petitioner probes the nature of law firm liability for malpractice. Furthermore, in each case, at least one attorney was sued along with the law firm defendant, thereby obscuring the question of whether those courts even considered that the law firm could be liable for malpractice in the absence of a culpable individual attorney. *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 397, 715 N.E.2d 518. *Blackwell v. Gorman,* 142 Ohio Misc.2d 50, 2007-Ohio-3504, 870 N.E.2d 1238, ¶ 1; *Rosenberg v. Atkins* (Oct. 5, 1994), Hamilton App. No. C-930259, 1994 WL 536568, at *2; *N. Shore Auto Sales, Inc. v. Weston, Hurd, Fallon, Paisler & Howley, L.L.P.,* Cuyahoga App. No. 86332, 2006-Ohio-456, ¶ 1; and *Baker v. LeBoeuf, Lamb, Leiby & MacRae* (Oct. 7, 1993), S.D.Ohio No. C-1-92-718, 1993 WL 662352, *8.

**{¶ 29}** *Biddle* concerned the existence of a tort cause of action for the unauthorized disclosure of nonpublic medical information learned within a physician-patient relationship. *Biddle*, 86 Ohio St. 3d 395, 715 N.E.2d 518, paragraph one of the syllabus. *Biddle* was not a malpractice action, nor did we examine the nature of a law firm's liability for malpractice in that case. We held that the law firm in *Biddle* could be liable in tort as a third party for "inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." Id. at paragraph three of the syllabus. In *Biddle*, the law firm defended its receipt of patients' private records by arguing, in part, that the disclosing hospital was the

---

2. *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518; *Blackwell v. Gorman*, 142 Ohio Misc.2d 50, 2007-Ohio-3504, 870 N.E.2d 1238; *Rosenberg v. Atkins,* (Oct. 5, 1994), Hamilton App. No. C-930259, 1994 WL 536568; *N. Shore Auto Sales, Inc. v. Weston, Hurd, Fallon, Paisley & Howley, L.L.P.*, Cuyahoga App. No. 86332, 2006-Ohio-456; and *Baker v. LeBoeuf, Lamb, Leiby & MacRae* (Oct. 7, 1993), S.D.Ohio No. C-1-92-718, 1993 WL 662352.

law firm's client and therefore that the firm had a duty of confidentiality with regard to those records. Id. at 403. In rejecting the firm's arguments, we referred to the duties of law firms in general, but did so in relation to each lawyer's duty to maintain confidences. Id. at 404. Such duties emanate from the professional responsibilities of individual attorneys within the firm, consistent with the majority opinion in this case.

{¶ 30} In *Blackwell*, the plaintiff sued his former trial lawyer and his trial lawyer's law firm for malpractice. *Blackwell*, 142 Ohio Misc.2d 50, 2007-Ohio-3504, 870 N.E.2d 1238, ¶ 1. The trial court did not expressly consider whether a law firm may independently commit malpractice. Instead, the trial court evaluated whether the statute of limitations for the malpractice claim had expired. Id. at ¶ 5. Under R.C. 2305.11(A), the time for bringing a legal-malpractice claim begins to run from the latter of either a "cognizable event" or the termination of the attorney-client relationship. Id. at ¶ 53. The trial court declined to dismiss the case, finding that the tolling event—the end of the attorney-client relationship—occurred within the time to file suit. Id. at ¶ 58. Although the trial court referred generally to "representation" and "work performed" by the law firm, the decision specifically refers to work performed by individual attorneys, including the named individual attorney defendant, who worked for the client well within the one-year limit.[3] Id. at ¶ 56-57. It is not possible to parse the *Blackwell* judgment for the proposition that a law firm could independently commit malpractice or engage in an attorney-client relationship on its own.

---

3. We do not address today the complex attorney-client relationship that arises when a client employs several different or successive attorneys in the same firm, nor do we confront the interplay of those relationships and the tolling events listed in R.C. 2305.11(A). Similarly, our opinion does not reach questions of the duties and liabilities of a law firm that may arise from a general engagement agreement with a client. Those questions are beyond the scope of the question of state law certified by the Sixth Circuit Court of Appeals.

{¶ 31}    In *Rosenberg*, the plaintiff sued her former attorney and law firm.  *Rosenberg*, Hamilton App. No. C-930259, 1994 WL 536568, at *2.  The court of appeals held that the cause of action was malpractice, despite the plaintiff's arguments to the contrary, and that the suit was time-barred because it had not been filed within one year of the alleged malpractice.  Id. at *3.  Although the court of appeals noted that each of the claims against the law firm "arose out of the manner in which appellant was represented within the attorney-client relationship," the opinion does not explain whether the claims against the law firm were asserted directly or vicariously.  Id at *2-3.  Furthermore, the opinion does not address whether the law firm could be directly liable for malpractice or whether the firm could be liable in the absence of an individual attorney's malpractice.  As with *Blackwell*, it is impossible to parse this opinion to support the petitioner's position.

{¶ 32}    In *N. Shore Auto Sales, Inc.*, the plaintiff sued its former law firm and two attorneys.  *N. Shore Auto Sales, Inc.*, 2006-Ohio-456, at ¶ 1.  In the first paragraph of its opinion, the court of appeals indicated that it would refer collectively to the two attorneys and the law firm (Weston Hurd) as "Weston Hurd."  Id. at ¶ 1.  Given that the court of appeals referred to all defendants collectively as "Weston Hurd" throughout the opinion, the case is of no utility in our present inquiry.  For example, it is impossible to infer that the court referred only to the law firm when it marked the "end of the attorney-client relationship between Weston Hurd and [the client]" for statute-of-limitations purposes.  Id. at ¶ 18.  Moreover, the court did not consider whether a law firm could be independently liable for malpractice in the absence of a liable attorney.

{¶ 33}    Finally, *Baker* was a decision of a federal trial court that considered the validity of a forum-selection clause in a contract.  *Baker*, S.D.Ohio No. C-1-92-718, 1993 WL 662352 at *1.  The law firm at issue claimed that the plaintiffs had sued it, rather than the real party in interest, in order to avoid that

clause. Id. at *5. The federal court rejected this argument, finding that the plaintiffs had established a colorable claim of an existing attorney-client relationship with the law firm sufficient to avoid dismissal as a sham lawsuit. Id. at *6. The court found that the plaintiffs' pleadings were sufficient to survive a motion to dismiss. The court in *Baker* did not consider whether a law firm could be directly liable for malpractice or whether a law firm could be liable for malpractice in the absence of a named attorney who was himself subject to suit. We cannot ascertain whether the court considered the malpractice direct or vicarious, because several individual attorney defendants were also parties to the suit. Id. at *3. Thus, *Baker* is inapposite to the case before us.

{¶ 34} These cases speak of the ability of a law firm to maintain an attorney-client relationship or to commit malpractice only in very general terms. We cannot determine from these decisions whether the issue presented to the courts was based on direct or vicarious liability. And none of those courts addressed the narrow issue before us. In addition, these cases do not suggest that it is common practice for courts to consider law firms directly liable for malpractice or liable in the absence of a liable individual attorney. For all of those reasons, I find the cases cited by petitioner to be distinguishable from this case.

{¶ 35} I stress the narrowness of our holding today. This opinion should not be understood to inhibit law-firm liability for acts like those alleged by the petitioner. Rather, a law firm may be held vicariously liable for malpractice as discussed in the majority opinion. Further, our holding today does not foreclose the possibility that a law firm may be directly liable on a cause of action other than malpractice. Yet the limited record and the nature of answering a certified question do not permit us to entertain such an inquiry in this case.

{¶ 36} Therefore, I concur in the majority opinion.

PFEIFER, DEGENARO, O'CONNOR, and LANZINGER, JJ., concur in the foregoing opinion.

_____

Keating, Muething & Klekamp, P.L.L., Joseph M. Callow Jr., Danielle M. D'Addesa, and Charles M. Miller, for petitioner.

Taft, Stettinius & Hollister, L.L.P., Lawrence D. Walker, and Benjamin J. Parsons, for respondents.

_____