[Cite as *Wilson v. Stark Cty. Dept. of Job & Family Servs.*, 2015-Ohio-5326.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOSEPH WILSON, ET AL. | JUDGES: |
| | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2015CA00114 |
| STARK COUNTY DEPARTMENT OF JOB & FAMILY SERVICES, ET AL. | |
| | O P I N I O N |
| Defendants-Appellees | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2014CV01308 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 14, 2015 |
| APPEARANCES: | |

For Plaintiffs-Appellants

DREW LEGANDO
JACK LANDSKRONER
Landskroner Greico Merriman, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113

For Defendants-Appellees

JOHN D. FERRERO
Stark County Prosecutor
VIVIANNE WHALEN DUFFRIN
STEPHAN P. BABIK
Assistant Proseucuting Attorneys, Civil
110 Central Plaza South, Suite 510
Canton, Ohio 44702

For Plaintiffs-Appellants

RYAN J. MELEWSKI
Melewski Dodez LLC
105 North Broad Street
Canfield, Ohio 44406

For Defendants-Appellees

MICHAEL J. HUDAK
BRAD A. RIMMEL
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio 44308

*Hoffman, J.*

{¶1}    Plaintiffs-appellants Joseph Wilson, et al. ("Wilsons") appeal the May 29, 2015 Judgment Entry – Nunc Pro Tunc entered by the Stark County Court of Common Pleas, which granted defendants-appellees Stark County Department of Job & Family Services ("SCDJFS") and the Stark County Board of Commissioners' motion for summary judgment.

## INTRODUCTION

{¶2}    Stark County operates a Public Children Service Agency, which is responsible for placing dependent children in foster homes.  Stark County's placement responsibilities are carried out by its employees, who work "out in the field" and who ultimately approve foster placements.  This case arises from the approval and placement of "John Doe" by county employees Vandeborne, Bell, and Montgomery in the Wilsons' home on a foster-to-adopt basis.

## STATEMENT OF FACTS AND CASE

{¶3}    John Doe came into SCDJFS care at birth and county employees were very familiar with him.

{¶4}    John Doe was sexually abused during his first placement in a foster home by the grandson of his foster parents.  During subsequent foster placements, he repeated the sexually abusive behaviors he had suffered against other children in the foster homes.

{¶5}    After several failed placements, John Doe was placed in the home of P.V. and V.V. ("Vs").  The Vs were not advised of John Doe's history of sexual abuse or his history of sexually abusing others.  The Vs eventually discovered John Doe was engaging

in sexual activity and reported same to a case worker for SCDJFS. It was then the Vs were informed of John Doe's past history.

{¶6} The Vs sought counseling for John Doe regarding his ongoing sexualized activity. A clinical psychologist opined John Doe's history of sexual abuse was related to his sexual behaviors toward other children and reported this information to Stark County.

{¶7} Thereafter, John Doe sexually attacked and molested the Vs' four-year-old-daughter. The Vs reported the assault to the assigned SCDJFS's worker and requested John Doe be removed from their home. He was removed in February, 2004.

{¶8} In 2008, John Doe was placed in the home of the Wilsons by a SCDJFS employee who did not disclose any of John Doe's history of sexual abuse directed toward other children. The Wilsons allege the employee affirmatively and falsely represented John Doe had no history of sexually acting out and was friendly and plays well with other children; only mentioning Joh Doe might have been abused in his first placement.

{¶9} John Doe lived with the Wilsons for nearly four years on a foster placement. The Wilsons were scheduled to adopt him in August, 2012. On the eve of his adoption, the Wilsons allege they discovered John Doe had been sexually molesting one of their children. John Doe was immediately removed from the Wilsons' home and the adoption cancelled.

{¶10} As a result of the foregoing, the Wilsons filed a tort claim on behalf of their minor children against Appellees. The claim against Appellees was premised upon the Wilsons' allegations the defendants were vicariously liable for the actions of the employees of SCDJFS who were involved in the placement of John Doe. The complaint

specifically alleged the actions of the employees were reckless within the meaning of the Political Subdivision Tort Liability Act (R.C. 2744.03(A)(6)(b)).[1]

**{¶11}** Appellees moved for summary judgment, asserting they were immune even if the employees were not immune under R.C. 2744.03(A)(6). The trial court granted Appellees' motion via Judgment Entry – Nunc Pro Tunc filed May 29, 2015. It is from that judgment entry the Wilsons prosecute this appeal, assigning as error.

**{¶12}** "I. THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS-APPELLEES."

*Summary Judgment*

**{¶13}** Civ. R. 56 states in pertinent part:

**{¶14}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment,

---

[1] The Wilsons filed a separate civil action against a number of individual employees of SCDJFS.

interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶15}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist.1999).

**{¶16}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

**{¶17}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but

instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**{¶18}** The Wilsons frame the issue presented to this Court as follows:

**{¶19}** When a plaintiff claims that an employee of a political subdivision was reckless under R.C. 2744.03(A)(6)(b), can the plaintiff file suit against "the employee, the political subdivision, or both," pursuant to the rule enunciated in *Nat'l Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, at ¶¶21-22; *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, at ¶20; State ex rel. *Flagg v. Bedford,* 7 Ohio St.2d 45, 48 (1966); and *Losito v. Kruse*, 136 Ohio St. 183, 187 (1940)?

**{¶20}** We limit our answer to the issue presented by this case. We hold a plaintiff cannot sue the political subdivision individually for the recklessness of its employee under R.C. 2744.03(A)(6)(b). Our reasons follow.

**{¶21}** Of primary significance in our decision is that three of the four Ohio Supreme Court cases cited by the Wilsons in support of their argument (*Wuerth, Comer and Losita*) involved tort claims against private parties, not political subdivisions. The fourth (*Flagg*) was decided before the enactment of the Political Subdivision Tort Liability Act in 1985.

**{¶22}** In *Greene County Agricultural Society v. Liming,* 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141, 2000–Ohio–486, the Supreme Court of Ohio explained the three tier analysis required for determining if sovereign immunity applies:

> R.C. Chapter 2744 sets out the method of analysis, which can be
> viewed as involving three tiers, for determining a political subdivision's
> immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that

political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.

{¶23} R.C. 2744.02(A)(1) states:

For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

{¶24} The parties do not dispute the claim alleged by the Wilsons involved performance of a governmental function. R.C. 2744.02(A)(1) provides the defendants immunity except as provided in division (B) of that section.

{¶25} We find the trial court properly determined none of the five (5) statutory exceptions in R.C. 2744.02(B) applied. That determination does not appear to be disputed by the Wilsons.

**{¶26}** However, the Wilsons maintain because employees of political subdivisions are not immune from liability if their acts or omissions are undertaken in a reckless manner, there is no requirement that an employee be named as a party to the suit under traditional, common-law pleading rules. We, as have numerous other appellate districts, disagree.

**{¶27}** This Court held in *Dunn v. Licking County Humane Society*, 5th Dist. Licking No. 14-CA-101, 2015-Ohio-2561 "[t]he final tier of the analysis… is only applicable" if "the political subdivision is subject to liability under one of the five exceptions contained in R.C. 2744.02(B). Id, at ¶50. The *Dunn* decision was consistent with this Court's earlier holding in *City of Columbus v. Sanders*, 5th Dist. Delaware No. 11-CAE-05-0047, 2012-Ohio-1514 (Thus, where, as here, it has been properly determined that none of the exceptions in R.C. 2744.02(B) apply, it is unnecessary for this court to read the third tier of the immunity analysis to determine whether immunity can be restored to the city under R.C. 2744.03(A)(1) through (5), ¶33).

**{¶28}** As noted supra, other appellate districts have reached the same conclusion: *Reno v. City of Circleville*, 2nd Dist. Montgomery No. 20078, 2004-Ohio-781, ¶53 (a political subdivision may not be held liable under a theory of respondent superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies*); Pruce v. Sleasman,* 9th Dist. Lorain No. 11CA010088, 2012-Ohio-2427, ¶14 (political subdivision not vicariously liable for tortious conduct of its employees because respondent superior is not set forth as an exception to R.C. 2744.02's general immunity provisions); *Scott v. Dennis*, 8th Dist. Cuyahoga No. 94685, 2011-Ohio-12; ¶16, fn 1 (Scott's respondent superior claim is not addressed by any of the five enumerated exceptions to immunity);

*Carter v. Karnes*, 10th Dist. Franklin No 02 AP-98, 2002-Ohio-7193, ¶23 (explaining R.C. 2744.03(A)(6) is not applicable in the present matter because it relates only to the liability of the individual employee – not the liability of the political subdivision). See, also, Woods v. *City of Wellston*, S.D. Ohio No. 2:02-CV-762, 2005 WL 1406105, * * 17-18 (rejecting argument political subdivisions can be held liable under the doctrine of *respondent superior* if none of the exceptions in R.C. 2744.02(B) apply).

**{¶29}** Wilsons' assignment of error is overruled.

**{¶30}** The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Wise, J. concur