[Cite as *Sullivan v. Mercy Health*, 2025-Ohio-137.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| MICHELLE SULLIVAN, et al., | : | |
| Appellants, | : | CASE NO. CA2024-03-041 |
| - vs - | : | O P I N I O N<br>1/21/2025 |
| | : | |
| MERCY HEALTH, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2018 03 0493

Marlene Penny Manes, for appellants.

Rendigs, Fry, Kiely & Dennis, LLP, and C. Jessica Pratt, for appellees, Mercy Health and Mercy Health-Fairfield Hospital, LLC.

**HENDRICKSON, J.**

{¶ 1} Appellants, Michelle Sullivan and her husband, Christopher Sullivan, appeal the trial court's decision to deny their motions to compel and for Civ.R. 56(F) discovery as well as the trial court's decision to grant summary judgment to Mercy Health and Mercy Health-Fairfield Hospital, LLC (collectively, "Mercy").

### I. Factual and Procedural Background

**{¶ 2}** On March 2, 2014, Michelle, accompanied by Christopher, went to Mercy's emergency room complaining of abdominal pain. While in the emergency room, Michelle was evaluated by Jamilyn Bryant, a physician's assistant, who was supervised by Dr. Kenneth Koster. Bryant ordered Zofran to be administered for Michelle's nausea and Dilaudid to be administered for pain. Pursuant to that order, these medications were subsequently administered by a Mercy nurse named Bryan Dye.

**{¶ 3}** The Sullivans alleged that they informed the emergency room staff involved in Michelle's care that she was allergic to Zofran and that it should not be administered to her. However, Bryant (via courtroom testimony) and Dye (via affidavit) stated the Sullivans did not inform them of any alleged allergy to Zofran or tell them not to administer it. The Sullivans further claimed that they advised Mercy personnel that Michelle's allergy to Zofran was documented in Mercy's computer system after Michelle had an allergic reaction during a visit two years earlier. However, a scanning of Sullivan's "hospital bracelet" by Dye did not produce any warning or alert stating that Zofran should not be administered to Michelle. According to Bryant, Michelle's Mercy profile indicated at the time that while Zofran gave Michelle hives, it did not state Zofran resulted in anaphylaxis or other severe allergic reactions.

**{¶ 4}** After receiving Zofran, Michelle was admitted to Mercy for further evaluation of her abdominal pain. While admitted, Michelle began to suffer from additional symptoms, including anaphylaxis, that may have been causally related to an allergic reaction to Zofran.[1] Michelle received continuing treatment at Mercy for her ailments until

---

1. Mercy disputes that any of Michelle's symptoms during her March 2014 visit were caused by an allergic reaction to Zofran, and the Sullivans argue that issue has already been determined. Ultimately, whether Zofran was causally related to Michelle's symptoms or not, our conclusions here remain unchanged.

being discharged on March 6, 2014.

{¶ 5} After initially filing suit in 2015 but dismissing that lawsuit in 2017, the Sullivans refiled their complaint in 2018 and asserted "negligence/malpractice" against Mercy, Dr. Koster, Bryant, their professional corporations, and others, including John and Jane Does. The complaint described Dr. Koster and Bryant as Mercy's "principal, and/or agent, and/or servant, and/or employee . . . and/or independent contractor." The complaint cited to each named defendant's professional licensures and alleged that they did not have consent to administer Zofran to Michelle and that the administration of Zofran, despite verbal and electronic warnings, constituted a deviation from the standard of care. As a result of that breach, according to the Sullivans, Michelle required life-sustaining, critical care and suffered physical, emotional, and financial damages.

{¶ 6} The Sullivans' complaint included four other claims: (1) trespass of person "by administering medication to her for which they had no consent"; (2) assault and battery stemming from the first two claims; (3) lack of consent "by administering medication to Michelle . . . without her consent and in violation of the patient bill of rights and/or the policies of [Mercy]"; and (4) a loss of consortium claim on behalf of Christopher.

{¶ 7} The defendants filed motions for summary judgment and argued that the Sullivans' suit was untimely and barred by the statute of limitations. Summary judgment was eventually granted to Mercy but not to Dr. Koster and Bryant. Mercy subsequently filed motions in limine to prohibit the Sullivans from asserting or arguing direct or independent negligence by Mercy. The motion was granted, and at trial, the jury was specifically instructed that it would not make any findings regarding Mercy.

{¶ 8} At trial, the jury was asked whether Dr. Koster and Bryant were "negligent in the care and treatment of Michelle Sullivan" and whether they "failed to inform Michelle Sullivan about the material risks in the administration of Zofran?" The jury answered each

- 3 -

question "no" and returned verdicts in favor of Dr. Koster and Bryant on the Sullivans' malpractice and lack of informed consent claims. The trial court subsequently entered a final judgment consistent with the verdict.

{¶ 9} On appeal, we reversed the trial court's award of summary judgment to Mercy. *Sullivan v. Mercy Health*, 2022-Ohio-4445, ¶ 38 (12th Dist.) ("*Sullivan I*"). In *Sullivan I*, we concluded the trial court misapplied precedent in *Asai v. Obstetrics & Gynecology Assocs.*, 2020-Ohio-4350 (12th Dist.), in granting Mercy summary judgment. *Id.* at ¶39. In addition, despite the fact the jury found in favor of Dr. Koster and Bryant, we stated, "the Sullivans have raised additional claims against other parties. Considering the record, we find it would be inappropriate to terminate these proceedings at this time, as any further findings are better addressed on remand." *Id.*

{¶ 10} On remand, the Sullivans filed a motion to amend their complaint. The proposed amended complaint, like their initial complaint, contained five counts. However, unlike the initial complaint, none of these counts specified the theory of liability in their titles. Count I alleged the defendants "violated [the Sullivans'] rights to obtain informed consent" and violated the standard of care by failing to inquire about or properly assess Michelle's allergy history. Count II alleged the defendant's actions "led to a trespass upon the person of Michelle Sullivan when the unconsented to medication [Zofran] was administered to her." Count III alleged the defendants' actions "led to a harmful assault and/or battery upon Michelle Sullivan, as an unconsented touching and invasion of her body occurred." Count V again asserted derivative claims on behalf of Christopher.

{¶ 11} Count IV, however, stated that "if the computer system and/or bracelet scanning system did not serve to notify/alert the users of the possibility of an allergic reaction, [Mercy] failed in its responsibility to have a working system and deviated from its obligations to maintain said system." The Sullivans went on to further allege that

because there was no allergy alert when a nurse scanned her bracelet, "the failure of the defendants to maintain a working computer and bracelet scanning system" caused Michelle's damages.

{¶ 12} The trial court denied the Sullivans' motion to amend their complaint, finding undue delay on the Sullivans' part. The trial court's decision focused on the Sullivans' proposed Count IV and found that despite being aware of Mercy's computer system since July 2016, the Sullivans offered no explanation as to why they waited until March of 2023 to assert negligence regarding it. After denial of the Sullivans' motion to amend, Mercy filed a motion for summary judgment, arguing the Sullivans' claims against Mercy were barred by the doctrine of res judicata.

{¶ 13} Meanwhile, the Sullivans served Mercy with discovery requests regarding how Mercy evaluated and documented a patient's allergy history, how such information could be reviewed by staff, various Mercy policies and procedures, and information regarding Michelle possessed by Mercy, including her medical information and communications regarding her visits. After initially filing a motion to compel for not receiving responses on time, the Sullivans argued that the responses they eventually received from Mercy were evasive, non-responsive, and included unjustified claims of privilege. This prompted the Sullivans to file a Civ.R. 56(F) motion for an extension of time to complete discovery and respond to Mercy's motion for summary judgment.

{¶ 14} At a hearing on Mercy's motion for summary judgment, the trial court repeatedly raised two Supreme Court of Ohio cases it thought were applicable to disposition of the motion: *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594 (2009), and *Clawson v. Heights Chiropractic Physicians*, LLC, 170 Ohio St.3d 451 (2022). Neither party cited to these cases in their memoranda, and the Sullivans did not request to submit further briefing on the cases or otherwise object to the trial court's

consideration of them.

{¶ 15} Ultimately, the trial court denied the Civ.R. 56(F) motion for lack of good cause and denied the motion to compel after finding merely that Mercy's "discovery responses were complete and non-evasive." In addition, the trial court rendered summary judgment in favor of Mercy, finding it could not be directly responsible for medical malpractice and could not be vicariously liable for malpractice after Dr. Koster and Bryant, the only remaining named defendants that were agents of Mercy, were not found liable. The trial court relied on *Wuerth* and *Clawson* to come to this conclusion. Finally, the trial court ruled the Sullivans' claims against Mercy were barred by res judicata.

{¶ 16} The Sullivans raise four assignments of error on appeal.

## II. Analysis

{¶ 17} FIRST ASSIGNMENT OF ERROR: . . . THE TRIAL COURT COMMITTED REVERSIBLE ERROR WARRANTING ANOTHER REVERSAL AND REMAND WHEN IT DENIED PLAINTIFFS-APPELLANTS' POST REMAND MOTIONS AND IN FAILING TO FOLLOW THE DIRECTION/INTENT OF THIS APPELLATE COURT'S REMAND.

{¶ 18} First, the Sullivans argue that the trial court erred in denying their motions to amend their complaint, to compel discovery, and for a Civ.R. 56(F) extension of time to complete discovery and respond to Mercy's motion for summary judgment. The Sullivans also contend the trial court's orders were contrary to this court's orders in *Sullivan I*, but we will address this argument further below when discussing the Sullivans' remaining three assignments of error.

### A. Motion to Amend

{¶ 19} The trial court's decision to grant or deny a motion to amend a complaint is reviewed for an abuse of discretion on appeal. *Scovanner v. Ohio Valley Voices*, 2012-Ohio-3629, ¶ 28 (12th Dist.). An abuse of discretion occurs when the decision of the trial court was arbitrary, unreasonable, or unconscionable. *Id.* at ¶ 29. A party may amend

their complaint as a matter of course within 28 days after serving it. Civ.R. 15(A). Thereafter, the amendment of a pleading requires leave of court, but "[t]he court shall freely give leave when justice so requires." *Id.*

{¶ 20} However, "'[w]hile Civ.R. 15(A) allows for liberal amendment, the trial court does not abuse its discretion if it denies a motion to amend pleadings if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party.'" *Scovanner* at ¶ 28, quoting *Wagoner v. Obert*, 2008-Ohio-7041, ¶ 111 (5th Dist.). "'Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading.'" *Id.*, quoting *Wilmington Steel Products, Inc. v. Cleveland Electric Illuminating Co.*, 60 Ohio St.3d 120, (1991), syllabus.

{¶ 21} The fact Mercy's bracelet scanning system did not provide an allergy alert for Zofran has been known to the parties since 2016. No one contests this. However, the Sullivans never attempted to assert that this was the result of Mercy or its agents' negligence in maintaining its computer systems until filing the motion to amend the complaint in 2023. The Sullivans' 2018 complaint was couched in the allegation that the administration of Zofran by hospital staff was done without consent and constituted a deviation from the standard of care. All stated causes of action stemmed from this contention. We therefore agree with the trial court that the Sullivans' attempt to amend their complaint sought to add an additional theory of liability (simple negligence) and comes far too late in these proceedings.

{¶ 22} In addition, introducing a new claim like this would significantly alter and expand the scope of the case and require each party to engage additional experts and conduct discovery on this issue (which the Sullivans seemingly first sought to do only upon remand after our decision in *Sullivan I*). Such a drastic amendment would cause

undue prejudice to Mercy. Moreover, all of this assumes the information sought from March 2014 still even exists or can be recreated. Mercy's systems have undoubtedly undergone changes and updates during the nine years since the Sullivans originally filed suit in 2015. The trial court did not abuse its discretion in denying the motion to amend.

### B. Motion to Compel and Civ.R. 56(F) Motion

{¶ 23} An abuse of discretion standard also applies to review of the trial court's denial of the Sullivans' motion to compel discovery. *Total Quality Logistics, LLC v. BBI Logistics LLC*, 2022-Ohio-1440, ¶ 18 (12th Dist.). However, even in the event an abuse of discretion occurs, such an error may be deemed harmless if it "'pose[s] no danger of prejudice to the opposing party or to the court's essential functions.'" *State ex rel. Lapp Roofing & Sheet Metal Co. v. Indus. Comm.*, 2008-Ohio-850, ¶ 12, quoting *Natl. Mut. Ins. Co. v. Papenhagen*, 30 Ohio St.3d 14, 16 (1987); *See also* Ohio Civ. R. 61.

{¶ 24} Upon review, we note the Sullivans' motion to compel was originally filed because Mercy's responses were tardy (a fact Mercy admits). However, the Sullivans then proceeded to broadly claim that Mercy's responses were insufficient and contained unjustified claims of privilege. We also note that the Sullivans have never pointed to, at the trial level or on appeal, any specific objection to any particular response by Mercy. In addition, we see no indication in the record that, consistent with the mandate of Civ.R. 37(A), counsel for the Sullivans attempted to resolve disputes with opposing counsel regarding the content of the responses before asking the trial court to intervene.

{¶ 25} However, even assuming for the sake of argument that the trial court abused its discretion or otherwise erred in concluding Mercy's answers were legally sufficient, any such error would be harmless. In its summary judgment order, the trial court found that Mercy could not, as a matter of law (1) be found directly liable for medical malpractice under Ohio law; (2) be found vicariously liable for medical malpractice

because Dr. Koster and Bryant, the only named Mercy agents, were found not liable; and (3) be found liable for malpractice because the issue of whether malpractice stemming from a lack of informed consent had occurred was resolved when the jury returned verdicts in favor of Dr. Koster and Bryant (applying res judicata).

{¶ 26} The Sullivans offer no argument as to why their requested discovery, which related to Mercy's maintenance of its computer system and various policies and procedures, would have altered the trial court's summary judgment decision. Those issues were effectively foreclosed by denial of the Sullivans' motion to amend their complaint or would not have altered the trial court's conclusion that Mercy could not be found directly or vicariously liable after the jury's verdict. We therefore find no reason to reverse the trial court's decisions.

{¶ 27} This assignment of error is overruled.

{¶ 28} SECOND ASSIGNMENT OF ERROR: IN LIGHT OF THIS COURT OF APPEALS' REVERSAL AND REMAND IN *SULLIVAN I*, 2022-OHIO-4445, THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY SUA SPONTE INVOKING THE CASES OF *NATL. UNION FIRE INS. CO. OF PITTSBURGH, PA v. WUERTH*, 122 OHIO ST.3D 594, 2009-OHIO-3601, 913 N.E.2D 939, AND *CLAWSON v. HEIGHTS CHIROPRACTIC PHYSICIANS, LLC*, 2022-OHIO-4154, TO THE HOSPITAL'S RES JUDICATA ARGUMENT IN GRANTING THE HOSPITAL SUMMARY JUDGMENT.

{¶ 29} THIRD ASSIGNMENT OF ERROR: THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE HOSPITAL'S MOTION FOR SUMMARY JUDGMENT WHEN IT SUA SPONTE APPLIED *NATL. UNION FIRE INS. CO. OF PITTSBURGH, PA v. WUERTH*, 122 OHIO ST.3D 594, 2009-OHIO-3601, 913 N.E.2D 939, AND *CLAWSON v. HEIGHTS CHIROPRACTIC PHYSICIANS, LLC*, 2022-OHIO-4154.

{¶ 30} FOURTH ASSIGNMENT OF ERROR: THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO RECOGNIZE THAT A HOSPITAL, WHICH WAS THE SPECIFIC PROVIDER OF A PATIENT'S HEALTH CARE, AND IN A HOSPITAL-PATIENT RELATIONSHIP, WAS DIRECTLY AND/OR VICARIOUSLY LIABLE FOR INJURIES TO A PATIENT FOR WHOM IT HAD DIRECT AND PRIMARY RESPONSIBILITY.

{¶ 31} We will address the Sullivans' last three assignments of error together. The Sullivans argue that summary judgment against them was in error for multiple reasons.

First, they contend the trial court's conclusion that res judicata barred their claims against Mercy goes against our statement in *Sullivan I* that "any further findings [as to Mercy] are better addressed on remand." The Sullivans argue this statement necessarily implied the existence of other valid, pending claims that cannot be barred by res judicata. Second, the Sullivans argue the trial court's invocation of *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601, and *Clawson v. Hts. Chiropractic Physicians, L.L.C.*, 2022-Ohio-4154, was improper because "neither *Wuerth* or *Clawson* are relevant" to claims of direct negligence by Mercy and its non-physician staff and because neither party cited to these cases as applicable authority.

### C. Res Judicata

{¶ 32} "'Application of the doctrine of res judicata/collateral estoppel to a particular issue is a question of law'" that we review de novo. *Lycan v. Cleveland*, 171 Ohio St.3d 550, 2022-Ohio-4676, ¶ 21, quoting *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 174 Ohio App.3d 135, 2007-Ohio-6594, ¶ 41 (10th Dist.). "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Id.* at ¶ 22, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995).

{¶ 33} Collateral estoppel is the relevant legal doctrine in this appeal, and it "prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). The doctrine "applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id.*, citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108 (1969), paragraph two of the syllabus.

{¶ 34} We agree with the trial court that res judicata bars the Sullivans' medical malpractice claim against Mercy. As previously stated, the Sullivans' 2018 complaint was centered on the allegation that the administration of Zofran by hospital staff was done without consent and constituted a deviation from the standard of care. The complaint did not differentiate this claim as to any defendant, be they an organization, individual physician, or other healthcare staff such as nurse Dye (who has never been a named defendant). At trial, the jury found Dr. Koster and Bryant did not commit malpractice because there *was* informed consent to administer Zofran. Therefore, because Dr. Koster and Bryant were in privity with Mercy, the Sullivans must be precluded from re-litigating the issue of whether they consented to the administration of Zofran in March of 2014 while at Mercy. The trial court properly granted summary judgment to Mercy on the basis of res judicata.

{¶ 35} We also disagree with the Sullivans that *Sullivan I* impliedly determined that remaining claims in this case were valid and could not be barred by application of res judicata. *Sullivan I* concerned only whether the trial court had properly relied upon our opinion in *Asai v. Obstetrics & Gynecology Assocs.*, 2020-Ohio-4350 (12th Dist.), in granting summary judgment to Mercy on statute of limitation grounds. We reversed the trial court's judgment and stated it was appropriate for the trial court to consider the import of the verdict in favor of Dr. Koster and Bryant as to Mercy upon remand. Our decision made no determination as to the factual or legal merits of the Sullivans' claims against Mercy and certainly did not approve any attempt to amend said claims or add additional theories of recovery.

### D. *Wuerth* and *Clawson*

{¶ 36} Finally, the trial court did not err in concluding *Wuerth*, 2009-Ohio-3601, and *Clawson*, 2022-Ohio-4154, stood as an additional basis to grant summary judgment. In

*Wuerth*, the Supreme Court of Ohio reiterated its prior holding that "because only individuals practice medicine, only individuals can commit medical malpractice . . . [therefore,] '[a] hospital does not practice medicine and is incapable of committing malpractice.'" *Wuerth* at ¶ 14, quoting *Browning v. Burt*, 66 Ohio St.3d 544, 556 (1993). Stated differently, an organization "cannot directly commit malpractice . . ." *Clawson* at ¶ 23.

**{¶ 37}** Under Count I of the 2018 complaint, the Sullivans alleged "negligence/malpractice" against Mercy, Dr. Koster, Bryant and others. Again, the complaint did not differentiate its claims as to any defendant while also citing to the professional licensures and medical practices of all named defendants. As a result, the complaint sounds solely in a malpractice action as opposed to a general negligence action against various classes of defendants. "When the gist of a complaint sounds in malpractice, the other duplicative claims . . . are subsumed within the . . . malpractice claims." *Rumley v. Buckingham, Doolittle & Burrough*, 129 Ohio App.3d 638, 641 (10th Dist.1998); *see also White v. Ohio Pub. Def*., 2019-Ohio-5204, ¶ 11 (10th Dist.).

**{¶ 38}** The Supreme Court's holdings in *Wuerth* and *Clawson* are therefore, contrary to the assertions of the Sullivans, self-evidently relevant to this case because Mercy, a hospital, cannot be found directly liable for malpractice. In addition, Mercy cannot be found vicariously liable for malpractice because the jury rendered a verdict in favor of Dr. Koster and Bryant, the only remaining, individually named Mercy defendants in this case. *See generally Hildebrandt Family Partnership v. Provident Bank*, 2010-Ohio-2712, ¶ 20 (12th Dist.) (holding a law firm cannot be held vicariously liable for any alleged malpractice because complaint failed to aver that one or more individuals at the firms

were liable for legal malpractice).[2]

{¶ 39} Even though neither side cited to *Wuerth* and *Clawson* in their memoranda regarding summary judgment, the trial court repeatedly raised the cases with counsel during oral argument on the motion. Despite undoubtedly being aware at that point that the trial court was considering *Wuerth* and *Clawson*, the Sullivans did not seek the opportunity to submit briefing on the cases and did not otherwise object to the trial court's consideration of them.

{¶ 40} As a result, the Sullivans cannot, for the first time, argue on appeal that the trial court should not have considered these cases. *State v. Salem*, 2023-Ohio-2914, ¶ 19 (12th Dist.). In addition, we fail to see any merit in the assertion that this court should not, at all times, consider relevant law. This court is "bound to follow the dictates of common law as espoused by the Ohio Supreme Court." *Hildebrandt* at ¶ 21.

{¶ 41} The Sullivans' second, third, and fourth assignments of error are overruled.

{¶ 42} Judgment affirmed.

BYRNE, P.J. and M. POWELL, J., concur.

---

2. The Sullivans argue that *Wuerth* and *Clawson* are not applicable outside of medical malpractice claims and do not bar other "medical claims," including claims against a medical institution for the alleged negligence of its nursing staff as opposed to physicians. The Sullivans also argue that such non-physician employees do not need to be individually named in the complaint. In support of these arguments, the Sullivans point to *Orac v. Montefiore Found.*, 2024-Ohio-4904, ¶ 42 (8th Dist.) (holding "*Wuerth* and *Clawson* do not preclude . . . suit against [an organization] for the negligence of its nonphysician employees" who were not named in the complaint). However, we need not consider these additional issues raised by the Sullivans in light of our conclusions that (1) the Sullivans' complaint can only be construed as a malpractice action based on a lack of informed consent and (2) that relitigating the informed consent issue is barred by res judicata.